Our first case for argument today is 2018-2308 Intellectual Ventures v. Unified Patents. Mr. Stewart, please proceed. Thank you very much, Your Honor. With the court's permission, I would like to start with Claim 6 of the 745 patent. This is the scanning limitation? This is the scanning limitation. Claim 6 is the dependent claim with the scanning limitation, and it requires scanning from the least recently used file to the most recently used file, or from A to Z. And the Board, unfortunately, from our perspective, construed scanning from A to Z to encompass scanning from A to B, or scanning from C to D. And this simply flies in the face of the plain language of the claim. It also has no support in the specification. Really, the plain language? I mean, I understand an argument that if you put aside the self-tuning column, that the other mentions of scanning are A to Z, whether Z is included or not. But the plain language, it's a perfectly normal alternative to say search from or something that doesn't require you to continue to the end. That is, if you find the thing you're looking for along the way, you stop, which is what Robinson is about, right? Yes, but I would disagree that that's consistent with the plain language of the claim. From A to Z until you find something is a different set of language than just simply from A to Z. What the Board essentially did is construe from A to Z to mean from A towards Z, which I think is very different language. And Judge Toronto mentioned the specification. I will get to the tuning issue in just one second. But all of the examples in the specification do show going from the LRU to the MRU without stopping short. And when the inventor wanted to stop short of the MRU, he knew how to phrase it. He simply, in Claim 15, for example, states that the scan excludes the MRU. And the Board originally construed Claim 6 to require scanning all the way from the LRU to the MRU inclusive. The Board's reversal, of course, came in light of the tuning discussion in the patent specification. And I think that the Board simply misunderstood what the specification discloses there with respect to the tuning function. That function relates to files that were frequently used in the past but have not been used in quite a while, such as segments from a movie that were watched quite a while ago. While you're watching the movie, the files are being used repeatedly, but once you stop watching the movie, they're not used at all. These files have the potential to get stuck in the cache for a very long time. And the tuning function deducts from the frequency factors near the least recently used file to ensure that files that were frequently used long ago are eventually evicted from the cache. The specification language that the Board relied on at Column 7, Line 3, determines how close to the LRU a file must be for the deductions from the frequency factors to occur. It's not talking about how far from the LRU you scan to determine which files to evict. It's simply how far you move forward or backward to decide whether or not to start deducting from the LRU or from the frequency factors near the LRU to implement this tuning feature. Even if the tuning and scanning were the same thing, the plain language of the claims... Can I ask you this question? This microphone is very strange. I'm going to get away from the microphone, otherwise I can't hear myself think. The claim language, put aside the Claim 6, just this language about the least recent and least frequent. I assume you would agree that taking those terms as a matter of plain language, there may not in fact be such an individual file. That's correct, Your Honor. If that's right, then the patent somehow has to provide in the spec, presumably, some information about how it is that you take these two properties, which need not coincide, and give meaning to them in such a way that it's possible to identify a file that would fall within this oddly-put-together, double-characteristic claim element. Why doesn't the tuning, the self-tuning column, serve an essential function of giving meaning to language that cannot possibly have its plain meaning? Well, the tuning function... That is, you have to decide... If you say frequency, frequency means a number of times over a unit of time. Now, define the unit of time. It can be lots of different things. Since the computer first came out of the box, or since yesterday, or in the last hour. Why isn't that a part of the process of defining the key term of the claim? I don't think the tuning function relates at all to defining the phrase least frequently used and least recently used. So you want to say, you know, if the movie has not been viewed in the last 24 hours, get rid of it because we don't really think that that's a meaningful, most frequent thing anymore. Why isn't that one way of defining this odd, double-characteristic claim term? I just don't see it as being definitional at all. Or helpful in understanding what least frequently and least recently used file means. I mean, there are certainly embodiments disclosed throughout the specification which don't have tuning at all. It's an option. And in those embodiments, there would still be a least frequently and least recently used file that needs to be identified and evicted. Thank you, Your Honor. Moving from the claim construction, well, I think I was in the middle of saying that even if one viewed the tuning function and the scanning function as the same thing or interrelated, we believe the plain language of the claims requiring that one scan all the way from A to Z would exclude this interpretation of the tuning embodiment. What do you do about the board's alternative finding that even under your A all the way to up to or including Z, Burton teaches the element? That's correct. That's where I was moving next, Your Honor. And the argument there is that Burton would scan every file if Burton had fewer than 1,024 entries in its cache. And Burton simply does not disclose such a small cache. Burton is explicit that its caches will have, quote, likely thousands of cache entries. That's column three, line four. And there was no argument presented below or presented in this court that it would have been obvious to modify Burton to use such a small cache. The argument made by EMC is that only the small caches were known, which we agree with, small caches were known. But EMC makes no effort to explain why it would have been obvious to use a small cache in Burton, and the board's findings did not make any such finding either. Does Burton require a larger than 1,024 entry cache or just say indicate that in general caches are going to be bigger than that? He states that for his disclosure, for his embodiments, that the caches are going to be thousands of cache entries. He doesn't specifically come out and state it would be wrong or inappropriate to use a small cache, but the absence of disclosure is not disclosure. I also think, we also think, Your Honors, that Burton does not even disclose directionally scanning from the LRU toward the MRU. Burton makes no mention of direction, and the text of Burton must trump the unsupported assertions of EMC's expert. That is what the board originally found when it initially denied institution on claim six, and the evidence on this point didn't change after institution. I'd like to move on briefly, I've got about two and a half minutes remaining here, to claims four and five, which include the limitation frequency factors, and this limitation is relevant to both the Burton and Caretta grounds. The claims expressly require frequency factors, indicating how often each of the corresponding files are requested by the operating system. The board construed the frequency factors limitation so broadly that these factors do not indicate how often a file has been requested. They bear no discernible relationship to the frequency of file requests. We showed this in the example on page 21 of our opening brief, and in that example the so-called frequency factor is based in part on the number of times a file has been accessed, so that it's consistent with the board's construction, but at the same time the frequency factor is also based upon file size. You add the file size in bytes or bits or megabytes, whatever you like, you add the file size to the number of times the file has been accessed to get your resulting number. That resulting number simply doesn't bear any relationship to the frequency of access. The frequency number is lost in the overwhelming size of the file size. So we don't believe that the board's construction can be reconciled with the language of the claims. The petitioners argue that the specification mandates a broader construction than the plain meaning, but the petitioners treat plain construction as a game in which every thought or idea that the inventor had in the specification, the claims must be stretched to cover that, and that's simply not the law. We cited cases to that effect in our reply brief. The petitioner's argument regarding the file history we believe is also meritless. The petitioners argued that the patentee acquiesced in the examiner's unstated claim construction during the original prosecution, and they rely on the Lemelson v. General Mills case for that. But this court distinguished Lemelson in both Torfarm v. Rambacci and again in Woods v. DeAngelo, and in these cases this court explained that Lemelson merely holds the limitations added to overcome a rejection cannot be immaterial to infringement. These cases leave no room for any argument that a claim amendment constitutes acquiescence in the examiner's claim interpretation, particularly unstated interpretation. I see that I'm running up on my opening time. Okay, we'll save the rest for your rebuttal. All right, thank you very much, Chair. Let's hear from Mr. Fleming. Good morning, Your Honor. May it please the Court, Mark Fleming together with David Ian on behalf of the appellees. I take my cue from Mr. Stewart and begin with scanning, but of course I'm happy to address any issues in whatever order the Court likes. I think with respect to scanning, the easiest way to resolve it is per Judge Toronto's question that the Board found as a fact that when the cash is less than 1024 entries, Burton scans all entries from the LRU all the way to the MRU. There's nothing in Burton constricting itself either in the specification or in Burton's claims to caches that are greater than 1024. Mr. Stewart just admitted caches smaller than 1024 entries were well known. The main appellate objection in the briefing from Intellectual Ventures is a procedural one. We would submit that that challenge is waived. The reply brief at page 20 concedes that they didn't object to this testimony before the Board. They could have done so in their motion for observations. They could have done so at the oral hearing. This Court does not reverse the Board on grounds that were not put to the Board in the first place. Well, even if we agreed with you on the Board's alternative finding that Burton discloses scanning all of the items in the cache because it doesn't actually specify a number that the cache has to have and there could be caches with less than 1024, even if we agreed with you, is there any necessity in our reviewing the scanning limitation? And I ask because there are a number of claims that contain the scanning limitation that were dropped from the IPR. I don't know if you remember that, which means they're still out there. And what if it's our view that the narrower scanning limitation proposed by the appellant is in fact the correct one? Are they asserting these claims in existing lawsuits, are you aware of? Not to my understanding, Judge Moore. I can check on that and follow up with the Court. But to answer the question, I don't think the Court needs to decide more than it should decide for purposes of this appeal. And for this appeal, deciding the substantial evidence question of the scanning limitation is sufficient to affirm on that limitation as to all claims against which it's been asserted. But you do understand that the construction of scanning, that the same term appears in other claims which were not subject to the IPR, so they remain valid for this patent. Well, they haven't been challenged. There would be no IPR estoppel. And so if there were something in a future case and it became relevant, then either my clients or someone else could bring an IPR on that and perhaps this Court would have to address the issue then. But for purposes of this case, I don't think it's necessary. That said, if the Court would like me to talk about it, I'm happy to. It might even be litigated in district court. It might well be, Judge Toronto, sure. But I'm happy to address it if the Court wishes. But I think for purposes of today's exercise, it is sufficient unto the day simply to affirm on the substantial evidence that the Board had in order to find that Burton disclosed this limitation even under intellectual ventures construction. I think Mr. Stewart made two points about the insufficiency of Burton. One, the size of the cache, and the other, the sequence in which the frequency factors are surveyed there. Correct. The direction of the scanning. That point, we believe, is also waived. We point that out on page 53 of our red brief. Intellectual ventures did not dispute the point below. The only argument that the Board heard was that they thought Burton was insufficient because it didn't go all the way to the MRU. There was no suggestion that the direction was wrong. They point in their reply brief simply to a couple of demonstratives, but those were not discussed at the oral hearing. Mr. Is there anything you can point to in Burton putting aside the procedural objection that makes clear that the directional, that it is directional as required? So the evidence the Board relied on is the evidence of our expert, Dr. Kubia Toews, who said that a skilled artisan would understand that in doing the scanning in Burton, you would begin at the least recently used unit and go upward from there. There's nothing more than that because this issue was not joined any further than that. Had he been asked, he would have said that the reason you do that is you can't identify where unit 1024 is going to be. It's not as though they're labeled on the side and you just start at 1024 and go down. You have to start at the bottom and go all the way up, and the only way you know you've gotten to 1024 is by counting them as you go. That's not in the record. He didn't say it, but that's because this wasn't joined. This could have been, but it wasn't. With respect to the least frequently, least recently used, which Mr. Stewart mentioned only briefly, and I will too, I think the same point applies, which is the Board found, supported by substantial evidence, that the Lee reference discloses that limitation even under the proposed construction that Mr. Stewart advances, which is that the system can't ever evict the most recently used unit. The Board clearly relied on the heap and linked list embodiment of Lee, where the most recently used unit winds up in a heap, but the evicted unit only comes from the linked list. There's plenty of substantial evidence supporting that. I didn't hear Mr. Stewart challenge it this morning, so I think that's sufficient for affirmance of that ground, which has to do with Claims 4, 5, and 6. With respect to frequency factors, finally, indicates does not have a special technical meaning. Intellectual interest has always relied on its ordinary and customary meaning. Burton itself uses that term repeatedly throughout its specification, saying that its variable, the LRU rank, indicates both the time of last access, which is recency, and the number of accesses, which is frequency. It says that repeatedly. We cite it in our brief. If indicates means, whatever indicates means in this patent, it must also mean when Burton, speaking to the same skilled artisan, uses the exact same word, and that's reinforced by Dr. Kubiotowicz's testimony, which the Board was entitled to credit and did credit on pages 82 to 83. So we think there's, again, substantial evidence as to all of those. The only claim as to which the claim construction issue is even relevant is Claim 14, and that's just because of the curious procedural posture of this, that the Board found that Burton disclosed frequency factors even under Ivey's construction, did not make such a finding as to Karedla, didn't opine on that, but we think the construction is correct in any event, not least because the same word is used by both Burton and the patent, and also because, as the colloquy with Judge Toronto indicated, the claims plainly cover embodiments under the heading of preferred embodiments that adjust frequency factors based on criteria other than frequency. It can't be that the frequency factor always is a raw count of the number of times a file was accessed. If that were the case, it would be impossible to get rid of the movie because the files would have been used a million times and it would stay in the cache polluting it. The key point of this patent is that frequency factors get decremented over time. That's how you deal with the aging out of files that are no longer needed, and at that point, obviously, the frequency factor cannot be a raw count of the number of times the file was accessed. Your ability to talk without breaths or breaks is really quite remarkable. It's a family skill, Your Honor. I hope I'm not going too fast and that I haven't blown past things. No, but I feel like you've covered everything. Anything else? That's it, Your Honor. Thank you very much. I appreciate the Court's attention. I may be forced to race through as well. There are several points I would like to raise. First, I believe the counsel's principle argument on Burton is that Burton does not teach away from using a small number of blocks in a cache, but our point is that Burton doesn't teach it either, and this is obviously a case where the prior art needs to teach what is being asserted in order for there to be an anticipation or obviousness. Also, with respect to whether it would have been obvious to modify Burton to include a small cache, Burton, we think the proposed modification really would violate the fundamental principles of operation of Burton. Burton considers only files at the very bottom of the cache to ensure elimination of files that are at the LRU end of the cache while avoiding elimination of the MRU files, but EMC is effectively proposing to have Burton's algorithm examine files at the MRU end, which is contrary to the teachings of Burton. I did also want to address the waiver argument that was raised with respect to the directionality of the scanning. This Court's case law holds that an issue is not waived unless it was neither pressed nor passed upon below. Harris Corp versus Erickson is an example of that, and here the Board passed upon the issue of directionality twice, reaching different decisions each time, first in its institution decision and then in its final written decision. In addition, as counsel mentioned, we did present the argument in our slides at oral argument below. We did not have an opportunity to get to that slide, as I don't have an opportunity to get to everything that I want here, but we do believe that that was a timely raising of the issue, and those slides were submitted as part of the record. The reason it was timely is that in the opening- What's the citation for that? For Erickson? For your slides or your argument. Oh, for the slides. It's the very last two pages of the appendix. Pages 4705 and 4706, Your Honor. And as I was saying, we do believe it was timely to raise that in our oral argument because in the opening brief, the petitioners conceded that Burton does not scan all the way to the MRU, that only the bottom section was scanned. So in our response, we argued that this concession was dispositive. The petitioners then reversed course in reply and argued for the first time that Burton does scan all the way to the MRU if the cache is small. So we feel we are entitled to argue in response to that new argument that Burton does not, in fact, disclose the claim direction, and we would say Chamberlain v. One World, a very recent case from this court, in support of that. Counsel mentioned that had he been asked, the expert would have stated certain things. That should have been in the petition. There's no reason why that should have been delayed until now. If the court will indulge me, I can briefly address the Lee grounds. The board held that Lee never eliminates the MRU file, but the board was relying solely on petitioners' presentations and excluded us from presenting our evidence, as we noted in the brief, and so we feel that we are entitled to a remand to have our evidence considered. All right. Thank you, counsel. The case is taken under submission. Thank you, Your Honor.